T.C. Summary Opinion 2015-47

UNITED STATES TAX COURT

RICHARD D. ESCALANTE AND BARBARA J. ESCALANTE, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17675-12S.                    Filed August 10, 2015.

Richard Allen Block, for petitioners.

Christopher J. Richmond, for respondent.

SUMMARY OPINION

CARLUZZO, Special Trial Judge: This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.[1] Pursuant to section 7463(b), the decision to be entered is not

_____

[1]Unless otherwise indicated, section references are to the Internal Revenue
Code of 1986, as amended, in effect for the years in issue. Rule references are to
(continued...)

reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In two separate notices of deficiency both dated April 10, 2012 (notices), respondent determined deficiencies in, and penalties with respect to, petitioners' Federal income tax for 2005, 2006, and 2007 as follows:

| Year | Deficiency | Penalty sec. 6662(a) |
|------|-----------|----------------------|
| 2005 | $2,666 | $533.20 |
| 2006 | 1,483 | 296.60 |
| 2007 | 18,828 | 3,765.60 |

The issues for decision for each year are: (1) whether petitioners are entitled to a deduction for a loss from their rental real estate activity, the resolution of which depends upon whether section 469(c)(7) applies to Mr. Escalante (petitioner); and (2) whether petitioners are liable for a section 6662(a) accuracy-related penalty.

## Background

Some of the facts have been stipulated and are so found. At the time the petition was filed, petitioners resided in California.

---

[1](...continued)
the Tax Court Rules of Practice and Procedure.

Except for a leave of absence noted below, beginning in 1996 and continuing through each year in issue petitioner was employed as a full-time teacher by the Los Angeles Unified School District (LAUSD).[2]

As a member of the United Teachers Los Angeles teacher's union (UTLA), petitioner was covered by the terms of the union contract between UTLA and the LAUSD then in effect (contract). According to article XIV, section 1.1, of the contract: "For compensation purposes only, full-time basic assignments shall be the number of hours per working day as shown below or the pay period equivalent thereof. Such basic assignment hours are not to affect or reduce the actual hours of service and duties as required under Article IX." For purposes of section 1.1, the class of employees covered by the contract of which petitioner is a member is designated to have a six-hour working day.

Article IX, section 1.0, of the contract states: "It is agreed that the professional workday of a full-time regular employee requires no fewer than eight hours of on-site and off-site work, and that the varying nature of professional duties does not lend itself to a total maximum daily work time of definite or uniform length." In addition to petitioner's classroom teaching responsibilities, he

---

[2]Barbara J. Escalante was also employed as a teacher by the LAUSD during the years in issue.

was required to attend monthly faculty meetings and an open house once every semester.

Petitioner took a leave of absence from teaching from July 2005 through July 2006. During his leave of absence petitioner began dedicating more time to investing in rental real estate.

During 2005 petitioners (or at least one of them) owned two rental properties in Los Angeles, one in Las Vegas, one in Henderson, Nevada, and one in Orem, Utah. In 2006 petitioners purchased two additional rental properties in Henderson, and in 2007 petitioners purchased another rental property in Henderson. In total, petitioners incurred approximately $1,978,000 in mortgage indebtedness to finance the acquisition of the rental properties.

As between the two of them, petitioner was primarily responsible for managing and maintaining the rental properties although Mrs. Escalante contributed as well. Among other things, petitioner met with prospective tenants, corresponded regularly with tenants, negotiated and prepared leases, collected rent, reviewed mortgage statements and made mortgage payments, researched housing markets, and developed and maintained income and expense statements for each rental property. Petitioner made repairs himself to his various rental

properties but also occasionally hired others to do so. An independent management company managed some of the properties.

Petitioner prepared multiple logs showing hours he claims to have spent on petitioners' rental real estate activity and on his employment as a teacher for each year in issue.

On jointly filed Federal income tax returns for 2005, 2006, and 2007 petitioners reported rental property income and expenses on Schedules E, Supplemental Income and Loss. The Schedules E show losses of $35,819, $137,157, and $98,905 for the years 2005, 2006, and 2007, respectively.

In the notices respondent determined that the losses reported on the Schedules E are subject to the section 469 passive loss limitations. Respondent also imposed an accuracy-related penalty under section 6662(a) for each year in issue upon various grounds.

## Discussion

As a general rule, the Commissioner's determination made in a notice of deficiency is presumed correct, and the taxpayer bears the burden of proving by a preponderance of the evidence that the determination is erroneous. See Rule

142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).[3]  Furthermore, deductions are a matter of legislative grace, and a taxpayer bears the burden of proving that the taxpayer is entitled to any deductions claimed.  Rule 142(a); <u>see</u> <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992).

I.  <u>Real Estate Activity</u>

A taxpayer is generally allowed deductions for certain business and income-producing expenses.  Secs. 162, 212.  Section 469(a) generally disallows for the taxable year any passive activity loss.  A passive activity loss is the excess of the aggregate losses from all passive activities for the taxable year over the aggregate income from all passive activities for that year.  Sec. 469(d)(1).  A passive activity is any trade or business, or any income-producing activity, in which the taxpayer does not materially participate.  Sec. 469(c)(1)(6).

Rental activity is generally treated as per se passive regardless of whether the taxpayer materially participates.  Sec. 469(c)(2).  However, the rental activity of a taxpayer is not treated as per se passive if the taxpayer satisfies the requirements of section 469(c)(7)(B).[4]  Sec. 469(c)(7)(A)(i).  If a taxpayer is

_____

[3]Under the circumstances, we are satisfied that the provisions of sec. 7491(a) are not applicable.

[4]There is an additional exception for rental real estate activity losses of a

(continued...)

described in that section (sometimes that taxpayer is referred to as a "real estate professional"), then section 469(c)(2) does not apply and the taxpayer's rental real estate activity, if conducted as a trade or business or for the production of income, is not treated as a passive activity if the taxpayer materially participates in the activity. Sec. 469(c)(1); <u>Fowler v. Commissioner</u>, T.C. Memo. 2002-223; sec. 1.469-9(e), Income Tax Regs.

Because respondent concedes that petitioner materially participated in the rental real estate activity,[5] we need not get into the complicated definition of the term "material participation" set forth in section 469(h) and its corresponding regulations. Instead, the disagreement between the parties focuses on whether petitioner is a taxpayer described in section 469(c)(7).[6] According to petitioners, he is; according to respondent, he is not.

---

[4](...continued)
natural person(s). <u>See</u> sec. 469(i). In the notices respondent allowed petitioners to deduct $25,000 for 2006, $25,000 for 2007, and, because of the phaseout provisions, $19,000 for 2005. <u>See</u> sec. 469(i)(3)(A).

[5]The parties proceeded as though petitioner had aggregated his various interests in real property. <u>See</u> sec. 469(c)(7)(A)(ii).

[6]Mrs. Escalante does not claim to be a taxpayer so described.

Section 469(c)(7) contains two tests that a taxpayer must satisfy to be described in that section. One requires that the taxpayer perform more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates. Sec. 469(c)(7)(B)(ii). The other requires that "more than one-half of the personal services performed in trades or businesses by the taxpayer during such taxable year are performed in real property trades or businesses in which the taxpayer materially participates". Sec. 469(c)(7)(B)(i).

Petitioners' rental real estate activity constituted a real property trade or business during each of the years in issue. See sec. 469(c)(7)(C). The dispute between the parties regarding petitioner's status as a person described in section 469(c)(7) is resolved by an examination of the amount of time he spent performing services in his real estate rental activity during each year in issue. According to petitioners: (1) the logs petitioner maintained show the time he spent as a teacher as well as the time he spent performing services in connection with his rental real estate activity; and (2) those logs further show that for each year in issue, petitioner has satisfied the two tests mentioned above.

There are no specific requirements as to the manner by which a taxpayer can establish the time spent performing services in connection with a particular

activity. Section 1.469-5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988), provides:

> The extent of an individual's participation in an activity may be established by any reasonable means. Contemporaneous daily time reports, logs, or similar documents are not required if the extent of such participation may be established by other reasonable means. Reasonable means for purposes of this paragraph may include but are not limited to the identification of services performed over a period of time and the approximate number of hours spent performing such services during such period, based on appointment books, calendars, or narrative summaries.

Although the above regulation is less than precise regarding the records to be maintained by taxpayers, it does not allow for a noncontemporaneous "ballpark guesstimate". Hill v. Commissioner, T.C. Memo. 2010-200, aff'd, 436 Fed. Appx. 410 (5th Cir. 2011); Carlstedt v. Commissioner, T.C. Memo. 1997-331; Speer v. Commissioner, T.C. Memo. 1996-323; Goshorn v. Commissioner, T.C. Memo. 1993-578.

The logs show the hours petitioner claims to have spent on petitioners' rental real estate activity and as a teacher during each year in issue, as follows:

| Activity | 2005 | 2006 | 2007 |
|----------|------|------|------|
| Hours spent on rental real estate | [1]4,000 | 1,989 | 1,353 |
| Hours spent as teacher | 618 | 390 | 932 |

[1]On the second page of the 2005 log, petitioner reported that he worked 2,450 hours on his real estate activity as opposed to the 4,000 hours reported on the first page.  According to petitioner the 4,000 hours worked were the hours "available for me to work" and the real number worked was 2,450.

The logs reflect six hours for each day petitioner worked as a teacher, which was the minimum time required under the contract for compensation purposes only.  The logs show no time for "off-site" activities, such as preparation for class, independent reading, faculty meetings, parent-teacher meetings and/or consultations, or attending his school's open house functions.

We understand from petitioner's testimony that the total of these "off-site" hours might be considerably less than the hours for which he was paid, but his failure to record this time in the logs undermines their reliability.  We are reluctant to rely upon the logs to establish the total amount of time petitioner spent as a teacher; and absent that information, we cannot determine whether petitioner spent more time in his real estate activity than he did as a teacher for any of the years in issue.

In addition to the obvious understatement in the logs of hours petitioner spent as a teacher for each year in issue, the reliability of the logs is also called

into question by what appear to be exaggerated amounts of time shown for relatively routine, recurring events, such as check writing. During petitioner's cross-examination respondent's counsel pointed out numerous instances of entries showing one to several hours for such activities. The Court does not exist in a vacuum, and we cannot divorce ourselves from our own experiences of daily life, such as the time it takes to review a mortgage statement and/or bill and pay the item by check. We reject petitioner's claim that the dozens, if not hundreds, of checks that he wrote over the years in issue each took at least an hour to prepare.

Other entries pointed out by respondent's counsel during petitioner's cross-examination add to our concerns. Rather than point out each one, however, suffice it to note the following exchange during petitioner's cross-examination after respondent's counsel totaled the hours shown in the logs for time spent on various activities on a particular day:

> MR. RICHMOND [respondent's counsel]: And on November 30[th] [2007], you worked a 25-hour day on your rental properties?
>
> WITNESS [petitioner]: Well, I guess it was a big day.
>
> MR. RICHMOND: I guess it was.

More than 24 hours of activities are shown on the logs for other days as well. Furthermore, some of the entries in the logs are attributable to services performed

by Mrs. Escalante; petitioner now concedes that her activities should not be taken into account. See sec. 469(c)(7)(B)(2). Finally, other entries in the logs are simply improbable given the activities described and the locations of petitioner's various properties where the activities are shown to have occurred.

Simply put, the logs are insufficient to show that petitioner has satisfied the tests set forth in section 467(c)(7)(B), and his testimony in that regard was, understandably, too generalized to otherwise do so. Because petitioners have failed to establish that petitioner satisfied these tests for any of the years in issue, petitioner is not a taxpayer described in section 469(c)(7) for any of those years. That being so, petitioners' rental real estate activity is treated as a passive activity for each of those years. It follows that respondent's disallowance of deductions for the rental property losses attributable to that activity are sustained.

## II.  Section 6662(a) Accuracy-Related Penalty

Section 6662(a) and (b)(1) imposes a penalty of 20% of the portion of an underpayment of tax attributable to the taxpayer's negligence or disregard of rules or regulations. Respondent bears the burden of production with respect to the imposition of the section 6662(a) accuracy-related penalty. See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). According to

respondent, the underpayment of tax[7] for each year is due to petitioners' negligence. "Negligence" includes any failure to make a reasonable attempt to comply with the Internal Revenue Code, including any failure to keep adequate books and records or to substantiate items properly. <u>See</u> sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.

Petitioners' challenge to the section 6662(a) penalty was ancillary to their challenge to the deficiency for each year in issue. That challenge, in turn, hinged upon the accuracy of the logs. Although the regulation cited above does not require a taxpayer's participation in an activity to be established by any specific type of record, it assumes that the "reasonable means" relied upon by the taxpayer was accurate. We have concluded that the logs are neither accurate nor reliable. Accordingly, petitioners are liable for a section 6662(a) penalty for each of the years in issue.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.

---

[7]In this case the deficiency, understatement of income tax, and underpayment of tax are all computed in the same manner. <u>See</u> secs. 6211, 6662(d)(2), 6664(a).