T.C. Memo. 2020-136

UNITED STATES TAX COURT

RONALD J. LUCERO AND MARY L. LUCERO, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 588-18.                              Filed September 29, 2020.

Ronald J. Lucero and Mary L. Lucero, pro sese.

Charles A. S. Wiseman, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PUGH, Judge:  In separate notices of deficiency both dated October 10,

2017, respondent determined deficiencies of $6,404 for Mr. Lucero for 2014 and

$8,192 for petitioners for 2015.[1]

_____

[1] Unless otherwise indicated, all section references are to the Internal

(continued...)

**[\*2]**   After concessions by petitioners, the remaining issue for decision is whether any of petitioners' real estate losses reported on their Schedule E, Supplemental Income and Loss, are limited by section 280A or 469 for the years in issue.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulated facts are incorporated in our findings by this reference.  Petitioners were residents of California when they timely filed their petition.

I.  The Rental Property

During the years in issue Mr. Lucero owned a short-term-rental property (Sea Ranch property) in The Sea Ranch, California, that is several hours from petitioners' home in Sacramento, California.  He rented the property to tenants for 146 nonconsecutive days in 2014 and 152 nonconsecutive days in 2015.  Petitioners paid a property management company, Sea Ranch Escapes, LLC (Sea Ranch Escapes), to manage the property's day-to-day rental operations, which included advertising to prospective tenants, collecting deposit fees and rent, maintaining and cleaning the property between stays, landscaping, assisting

---

[1](...continued)
Revenue Code of 1986, as amended and in effect at all relevant times.  Rule references are to the Tax Court Rules of Practice and Procedure.  All monetary amounts are rounded to the nearest dollar.

[*3] petitioners in hiring repair subcontractors, and responding to tenants' comments and complaints.  Mr. Lucero retained control over certain administrative decisions, such as setting rental rates and approving expenses over $100 (unless there was an emergency).

To save money petitioners performed some upkeep on the Sea Ranch property themselves.  Mr. Lucero drove to the Sea Ranch property approximately six to nine times each year to landscape, clean and inventory, and make and/or oversee any necessary repairs.  In 2015 Mrs. Lucero accompanied him to help clean, decorate, and inventory.  Some of those trips required one or both of them to stay multiple nights at the Sea Ranch property.  They also stayed at the Sea Ranch property with family for approximately one week during Christmas each year.

Petitioners did not keep any contemporaneous logs, calendars, or other documentation stating the number of hours they spent on activities related to the Sea Ranch property for the years in issue.  Rather, Mr. Lucero created a log while the case was with the Internal Revenue Service Office of Appeals (IRS Appeals) that attempted to reconstruct, using invoices and receipts, the number of hours petitioners spent on these activities.  In that log Mr. Lucero estimated that he spent a total of 267 hours on activities for the Sea Ranch property in 2014 and that he

[*4] and Mrs. Lucero spent a total of 273 hours on activities in 2015. The activities included paying bills, buying supplies, performing maintenance and repairs, traveling between petitioners' Sacramento home and the Sea Ranch property, coordinating with Sea Ranch Escapes, and preparing petitioners' tax returns.

## II. Petitioners' Tax Returns and Examination

Mr. Lucero prepared and filed timely (with the assistance of a paid preparer) his 2014 Form 1040, U.S. Individual Income Tax Return, electing single filing status. Included with the return was a Schedule E on which he reported total rents received for the Sea Ranch property of $26,223 and expenses of $43,854 for a net loss of $17,631. He prepared and filed timely (with the assistance of a paid preparer) petitioners' 2015 Form 1040, electing married-filing-jointly filing status. Included with the return was a Schedule E on which petitioners reported total rents received for the Sea Ranch property of $26,710 and expenses of $51,200 for a net loss of $24,490. The notices of deficiency disallowed any deduction for the entire Schedule E real estate loss for each year in issue.

**[\*5]** OPINION

I. Burden of Proof

Ordinarily, the burden of proof in cases before the Court is on the taxpayer. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Under section 7491(a)(1), "[i]f, in any court proceeding, a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax imposed by subtitle A or B, the Secretary shall have the burden of proof with respect to such issue." Higbee v. Commissioner, 116 T.C. 438, 442 (2001). Petitioners have neither claimed nor shown that they have presented credible evidence sufficient to shift the burden of proof to respondent as to any relevant factual issue under section 7491(a).

The Commissioner may bear the burden of proof with respect to "[a] new theory that is presented [by him] to sustain a deficiency". Wayne Bolt & Nut Co. v. Commissioner, 93 T.C. 500, 507 (1989); see also Rule 142(a)(1) (stating that the Commissioner bears the burden of proof for "new matter[s]"). The new theory shifts the burden to the Commissioner if "it either alters the original deficiency or requires the presentation of different evidence"; it remains with the taxpayer if the new theory "merely clarifies or develops the original determination". Wayne Bolt

[*6] & Nut Co. v. Commissioner, 93 T.C. at 507; see also Shea v. Commissioner, 112 T.C. 183, 191-197 (1999).

At trial respondent for the first time argued that section 280A precluded petitioners' deducting their real estate losses. For purposes of our analysis we assume, but do not decide, that respondent's section 280A arguments required the presentation of different evidence relating to petitioners' personal days and personal expenses at the property, and therefore respondent bears the burden of proof for his new position. Deciding this in petitioner's favor would not change the result here because, as we hold below, petitioners' real estate loss deductions are disallowed by section 469.

II.  Schedule E Real Estate Losses

A.  Petitioners' Use of the Sea Ranch Property as a Residence

Respondent argued that petitioners used the Sea Ranch property as a residence and a vacation rental for purposes of section 280A rather than as a residential or business rental property and, thus, are not entitled to deduct their rental real estate losses related to the property. Ordinarily, no deduction is allowed with respect to a dwelling unit used by the taxpayer as a residence during the taxable year. Sec. 280A. A dwelling unit is considered to be a taxpayer's residence if its use for personal purposes exceeds the greater of 14 days or 10% of

**[*7]** the days the unit is rented at a fair rental value in a taxable year. Sec. 280A(d)(1).

A taxpayer is deemed to have used a dwelling unit for personal purposes when, for any part of a day, the taxpayer or any member of the taxpayer's family uses the unit for personal purposes or any individual uses the unit unless a fair rent is charged for the use. Id. para. (2)(A), (C). Days spent primarily repairing and maintaining the unit will not count toward personal use merely because other individuals on the premises are engaged in some other activity. Id. para. (2); see also Rose v. Commissioner, T.C. Memo. 2019-73, at *24-*25; Van Malssen v. Commissioner, T.C. Memo. 2014-236, at *14-*15 (discussing the history of section 280A(d)(2)).

On the whole, we were not convinced by Mr. Lucero's testimony regarding the total hours he spent maintaining the Sea Ranch property, but on this point we accept his broader claim that most of his trips to the property were for upkeep. If we accept his testimony that every trip petitioners made to the Sea Ranch property, other than at Christmas, was for repairs or maintenance, then the time they spent at the Sea Ranch property for personal purposes totaled fewer than 14 days in each year. Respondent did not dispute that petitioners rented the Sea Ranch property to tenants for 146 days in 2014 and 152 days in 2015 or allege that petitioners

[*8] charged any of their tenants below-market rent. As respondent did not present any evidence of petitioners' expenses that were attributable to their personal use of the property, see sec. 280A(e), we conclude that section 280A does not limit any of the real estate loss deductions petitioners can claim with respect to the Sea Ranch property for the years in issue.

B. Passive Loss Limitation

A passive activity is any activity involving the conduct of a trade or business--or an income-producing activity--in which a taxpayer does not materially participate. Sec. 469(c)(1), (6). Section 469 limits a taxpayer's deductible loss from passive activities in a taxable year to the taxpayer's income from passive activities. Id. subsec. (d)(1). Any loss from passive activities exceeding the income from those activities constitutes a passive activity loss and any deduction is therefore disallowed for that taxable year; it may be carried over, however, to the next taxable year to offset passive activity income for that next year. Id. subsecs. (a), (b), (d)(1); sec. 1.469-2T(b)(1), Temporary Income Tax Regs., 53 Fed. Reg. 5711 (Feb. 25, 1988).

Petitioners' operation of the Sea Ranch property constituted an activity that was a trade or business under section 469(c)(6) and a passive activity under section 469(c)(1) unless they can establish that they were materially participating

[*9] in the activity during the years in issue. See, e.g., Bailey v. Commissioner, T.C. Memo. 2001-296, 2001 WL 1360438, at *7-*9. Rental activity is ordinarily passive, regardless of whether the taxpayers materially participate in the activity. Sec. 469(c)(2), (4); Bailey v. Commissioner, 2001 WL 1360438, at *3; sec. 1.469-1T(e)(1)(ii), Temporary Income Tax Regs., 53 Fed. Reg. 5702 (Feb. 25, 1988).[2] However, an activity that involves the use of tangible property is not a rental activity if "[t]he average period of customer use for such property is seven days or less" in a taxable year (short-term rental). Sec. 1.469-1T(e)(3)(ii)(A), Temporary Income Tax Regs., supra. On average the Sea Ranch property was used for short-term rentals in both of the years in issue, so petitioners' short-term-rental activities were not rental activities under the statute.[3]

We therefore must decide whether Mr. Lucero materially participated in the short-term-rental activities. Material participation requires that a taxpayer be involved in the activity on a regular, continuous, and substantial basis.[4] Sec.

---

[2] Neither party claims, nor do we find, support for applying the special rules for real estate professionals. See sec. 469(c)(7).

[3] Because we conclude that this was not a "rental activity" within the statute's meaning we also need not consider application of sec. 469(i).

[4] If a taxpayer is married, activity by the taxpayer's spouse counts in determining "material participation" by the taxpayer. See sec. 469(h)(5); sec.

(continued...)

**[\*10]** 469(h)(1).  A taxpayer is considered to have materially participated in an activity if he satisfies any one of seven regulatory tests.  Sec. 1.469-5T(a), Temporary Income Tax Regs., 53 Fed. Reg. 5725 (Feb. 25, 1988).  He may establish hours of material participation by any reasonable means.  Id. para (f)(4), 53 Fed. Reg. 5727.  Contemporaneous reports, logs, or similar documentation are not required if the taxpayer can establish his qualification by other reasonable means.  Id.  Reasonable means may include identifying services performed over a period of time and the approximate time spent performing those services using appointment books, calendars, or narrative summaries.  Id.  "[P]ostevent 'ballpark guestimate[s]'" of hours do not suffice.  Moss v. Commissioner, 135 T.C. 365, 369 (2010); see, e.g., Balocco v. Commissioner, T.C. Memo. 2018-108, at \*21; Bailey v. Commissioner, 2001 WL 1360438, at \*6.

Respondent determined that Mr. Lucero did not satisfy the material participation requirement for either year in issue.  Mr. Lucero contends that he met the third test for material participation in both years.  See sec. 1.469-5T(a)(3), Temporary Income Tax Regs., 53 Fed. Reg. 5726 (Feb. 25, 1988).  That test requires that the individual participate in the activity more than 100 hours during

⁴(...continued)
1.469-5T(f)(3), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988).

[*11] the taxable year and that the individual's participation in the activity not be less than the participation of any other individual (including individuals who are not owners of interests in the activity) for the year. See id.[5] Mr. Lucero primarily relies on a log he created while the case was with IRS Appeals in which he attempted to reconstruct the number of hours he and Mrs. Lucero spent on activities related to the Sea Ranch property using receipts and invoices.

The log includes time Mr. Lucero spent paying bills, coordinating with Sea Ranch Escapes, and preparing petitioners' tax returns. Section 1.469-5T(f)(2)(ii)(A), Temporary Income Tax Regs., supra, provides that work performed by an individual in his "capacity as an investor in an activity shall not be treated as participation in the activity * * * unless the individual is directly involved in the day-to-day management or operations of the activity." Petitioners

---

[5] We note that sec. 1.469-5T(a)(7), Temporary Income Tax Regs., 53 Fed. Reg. 5726 (Feb. 25, 1988), also provides a catchall "facts and circumstances" test for material participation. See Estate of Stangeland v. Commissioner, T.C. Memo. 2010-185, 2010 WL 3239181, at *15; Lapid v. Commissioner, T.C. Memo. 2004-222, 2004 WL 2244500, at *4. Like the third test in the regulation, the catchall test requires that an individual participate in an activity more than 100 hours during the taxable year. See sec. 1.469-5T(b)(2)(iii), Temporary Income Tax Regs., supra. Mr. Lucero cannot satisfy this test either because he paid Sea Ranch Escapes to manage the property for him and many of his management hours are precluded by sec. 1.469-5T(b)(2)(iii), Temporary Income Tax Regs., supra. See, e.g., Bailey v. Commissioner, T.C. Memo. 2001-296, 2001 WL 1360438, at *9; Chapin v. Commissioner, T.C. Memo. 1996-56, 1996 WL 62616, at *4.

[*12] were not involved in the day-to-day management or operations of the Sea Ranch property because Sea Ranch Escapes managed and operated the property. Mr. Lucero's time spent paying bills, coordinating with Sea Ranch Escapes, and preparing petitioners' tax returns constitute investor activities that do not count toward the 100-hour requirement. See Bailey v. Commissioner, 2001 WL 1360438, at *8; Barniskis v. Commissioner, T.C. Memo. 1999-258, 1999 WL 566839, at *5.

We also exclude the time Mr. Lucero spent driving between the Sea Ranch property and his Sacramento home. We recognize that petitioners drove several hours each way, but they "bear the expense of commuting (driving time) because it is a personal expense unless an allocation for additional expenses can be made between personal and business expenses." Ellison v. Commissioner, T.C. Memo. 2017-134, at *14 n.6 (citing Fausner v. Commissioner, 413 U.S. 838, 839 (1973)); see also Commissioner v. Flowers, 326 U.S. 465, 473 (1946); sec. 1.262-1(b)(5), Income Tax Regs.

Additionally, Mr. Lucero's log reported hours for tasks that appear excessive in relation to the task described, such as spending two hours shopping for coffee filters at Bed Bath & Beyond, and included time shopping both for the Sea Ranch property and for personal items, such as one hour shopping at Gualala

**[\*13]** Supermarket for 2 items for the Sea Ranch property (garbage bags and facial tissue) and more than 20 personal grocery items. We have found the credibility of a taxpayer's records to be diminished when the number of hours reported appears excessive in relation to the task described. See Antonyshyn v. Commissioner, T.C. Memo. 2018-169, at \*11; Hill v. Commissioner, T.C. Memo. 2010-200, 2010 WL 3564730, at \*5, aff'd, 436 F. App'x 410 (5th Cir. 2011). The inclusion of time for trips that combined business and personal purchases further erodes the log's reliability. See Rose v. Commissioner, at \*28-\*29.

Because these defects permeate the log, we need not make specific adjustments to exclude remaining categories of hours. The log itself is not reliable and, therefore, is not a reasonable means of establishing material participation hours. See id. at \*29. It amounts to "postevent 'ballpark guestimate[s]'" and does not establish that Mr. Lucero spent 100 hours on short-term-rental activities for the Sea Ranch property in either year in issue. See Moss v. Commissioner, 135 T.C. at 369.

Even if we were to assume that Mr. Lucero spent 100 hours on short-term-rental activities during those years, the record does not include any documents that show the number of hours other individuals, such as Sea Ranch Escapes, spent on those activities in connection with the Sea Ranch property. See sec.

[*14] 1.469-5T(a)(3), Temporary Income Tax Regs., supra. Mr. Lucero testified that he was heavily involved with the Sea Ranch property and that Sea Ranch Escapes spent much less time than he did on the short-term rental activities for the property, but he also testified that he only visited the property "six to eight times a year". Petitioners did not present any other evidence demonstrating Sea Ranch Escapes' participation. We conclude that petitioners have failed to show that Mr. Lucero's participation in short-term-rental activities exceeded the participation of any other individuals in either of the years in issue. See Hoskins v. Commissioner, T.C. Memo. 2013-36, at *14; Akers v. Commissioner, T.C. Memo. 2010-85, 2010 WL 1644649, at *3-*4.

Petitioners therefore have not met their burden of proving that Mr. Lucero materially participated in short-term-rental activities related to the Sea Ranch property for either of the years in issue. Accordingly, their real estate losses were passive activity losses for purposes of section 469, and we sustain respondent's disallowance of petitioners' real estate loss deductions for both years in issue.

Any contentions we have not addressed we deem irrelevant, moot, or meritless.

[*15] To reflect the foregoing,

An appropriate decision will be

entered.